IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| SHARON DARLENE PRATER, | ) |
| Plaintiff, | ) |
| vs. | ) Case No: 1:14-cv-01221-STA-tmp |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Sharon Darlene Prater filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 13, 2013. On April 18, 2013, the ALJ denied the claim. The Appeals Council denied the request for review. Thus, the decision became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1]  The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  It is "more than a mere scintilla of evidence, but less than a preponderance."[5]  The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6]  When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born October 11, 1961, and she completed the seventh grade.  Her only job was working as a maid at a motel.  She has an alleged onset date of December 31, 2001, and contends that she is disabled due to back and leg pain, insomnia, anxiety, and depression.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (2) Plaintiff has the following severe impairments: depressive disorder versus dysthymic disorder; anxiety disorder; remote injury to the left knee; and mild degenerative disc disease of the lumbar spine; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff retains the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except that she is limited to frequent stooping, crouching, crawling, kneeling, balancing and climbing; mentally, Plaintiff is limited to unskilled work; (4) Plaintiff has no past relevant work; (5) Plaintiff was an individual closely approaching advanced age on the date the application was filed; (6) Plaintiff has a marginal education; (7) transferability of job skills is not material to the determination of disability because Plaintiff's past work was unskilled; (8) using the Medical-Vocational Rules ("the Grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (9) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (10) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from

---

[8] R. 13-17.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff has no past relevant work, she can perform a substantial number of jobs in the national economy.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ did not properly weigh the medical evidence in the record, did

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

not properly assess her credibility, and formulated a residual functional capacity finding that was not supported by the evidence in the record. Plaintiff's arguments are not persuasive.

Plaintiff first argues that the ALJ failed to properly weigh the medical source opinions. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[15] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[16]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[17] and an opinion from a

---

[14] 20 C.F.R. § 404.1527(c)(2).

[15] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[16] Soc. Sec. Rul. 96–2P.

[17] 20 C.F.R. § 404.1502, 404.1527(c)(1).

medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[18] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[19] Opinions from non-treating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[20] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[21]

Here, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform a limited range of medium work, and Plaintiff has failed to show that she is otherwise more limited.

None of Plaintiff's treating sources opined that she was disabled. Instead, records show minimal degenerative changes in the lumbar spine with no musculoskeletal problems.[22] During a visit to the emergency room for acute back pain, x-rays showed minimal degenerative changes in

---

[18] *Id.* § 404.1502, 404.1527(c)(2).

[19] Soc. Sec. Rul. No. 96–6p at *2.

[20] 20 C.F.R. § 404.1527(c).

[21] *See* 20 C.F.R. § 404.1527(e)(2)(i).

[22] R. 210.

the lower lumbar spine.[23] Except for some decreased ranges of motion ("ROM"), clinical findings were normal.[24] Plaintiff was provided pain medication and discharged in stable condition.

Concerning Plaintiff's leg pain, she exhibited some ROM limitations, was diagnosed with sciatica and arthritis, and was provided an injection and medication.[25] In February 2011, she was told to take Ibuprofen as needed.[26] Shortly before the hearing, Plaintiff was diagnosed with sciatica and back pain, and medication was provided.[27] In February 2013, she was diagnosed with degenerative disc disease of the spine, and medications were prescribed.[28] Plaintiff's course of treatment was conservative, consisting only of prescriptions for medication; there is no evidence of physical therapy nor any recommendation for surgery. An ALJ may consider the type of treatment an individual has received and whether that treatment is indicative of disability.[29]

Dr. Leonard Hayden, a consultative examiner, noted that Plaintiff walked without a cane and used Ibuprofen for pain and inflammation.[30] Dr. Hayden opined that Plaintiff made a poor

---

[23] R. 257-58, 260, 269.

[24] R. 259, 262.

[25] R. 412 - 14.

[26] R. 405-06.

[27] R. 429-30.

[28] R. 442.

[29] *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed . . . recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations.").

[30] R. 306-07.

attempt on shoulder and spinal flexion.[31] Plaintiff's neurological examination was normal; her gait, station, and tandem walking were unremarkable; and she was able to balance on one foot.[32] Dr. Hayden did not set forth any functional limitations with regard to Plaintiff's physical abilities.

Dr. Saul Juliao reviewed the record, found the physical consultative examination findings to be unremarkable, except for some reduced ROM, and pointed out Plaintiff's suboptimal effort on examination.[33] Based on this information, he found that Plaintiff's allegations of disabling limitations were only partially credible.[34]

As for Plaintiff's mental limitations, notes from 2004-07 show that Plaintiff's mental status findings were essentially normal with occasional depressed mood.[35] In 2008, she was diagnosed with recurrent moderate major depressive disorder with a treatment plan of therapy sessions and medication; subsequent mental status findings were normal.[36] On January 13, 2011, Plaintiff alleged mental symptoms that she claimed affected her functioning.[37] Although she appeared sad and depressed, she was appropriately dressed and made good eye contact; impulse control was assessed as fair; her mood was depressed and angry, but she was fully oriented and

---

[31] R. 308.

[32] R. 308.

[33] R. 308-09, 327.

[34] R. 330.

[35] R. 233-44.

[36] R. 229-31.

[37] R. 274-76.

coherent. The diagnosis was major depressive disorder.[38] Subsequent reports showed that her memory was intact, and most other findings were normal, despite occasional depressed mood and anxiety.[39]

Plaintiff was examined by Dr. Stephen Rutledge, a psychologist. Testing showed significant difficulties reading and writing, and she was assessed with a number of marked and moderate limitations.[40] Plaintiff was cooperative, alert, coherent, and fully oriented with clear and logical thought processes and no problems with her short-term memory. She appeared able to follow written and spoken instructions and managed her medication with little difficulty and handled her finances.[41]

Dr. Thomas Lynch, a psychologist, reviewed the record. Dr. Lynch determined that the IQ testing was not valid because a full scale IQ score of fifty-four would indicate severe and blatant functional limitations and these were not present. Dr. Lynch pointed out that Plaintiff had not been in special education, had never repeated a grade in school, could read and write, and her activities of daily living and verbal skills were within normal limits.[42] Based on this evidence, the ALJ gave little weigh to the IQ testing. Dr. Lynch diagnosed dysthymic disorder and anxiety disorder not otherwise specified ("NOS").[43] He opined that she was mildly limited

---

[38] R. 281-82.

[39] R. 288-89, 367-68, 390-92, 432-33, 438.

[40] R. 314-20, 323-24.

[41] R. 314, 321.

[42] R. 29, 312, 315, 321, 341.

[43] R. 348, 350.

9

in the activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration, persistence, or pace, and had no episodes of extended deterioration.[44]

Substantial evidence supports the ALJ's finding that Plaintiff did not have limitations of disabling severity despite her various diagnoses.[45] "The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."

Next, Plaintiff complains of the ALJ's credibility findings. The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[46] A claimant's credibility comes into question when his or her complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence.[47] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[48] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's

---

[44] R. 348-55.

[45] *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); 20 C.F.R. §§ 404.1545(e), 416.945(e) (providing that, in order to prove disability, evidence must establish functional limitations, not just medical diagnoses).

[46] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[47] *Id.*

[48] *Id.*

demeanor while testifying."[49] However, the ALJ's credibility finding "must find support in the record."[50]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. In making his credibility determination, the ALJ considered the lack of objective medical evidence to support Plaintiff's complaints of disability, improvement in her mental health symptoms with treatment, lack of medication side effects, and inconsistencies between her statements and other evidence of record. When an individual's impairments are improved with medication and/or treatment, a finding of disability is not supported.[51]

Additionally, Plaintiff's complaints were inconsistent with her daily activities. Plaintiff cared for her personal needs without difficulty, performed household chores, including caring for her dog, shopped in stores, and handled her own finances.[52] Plaintiff reported that she could daily walk one mile and was able to finish what she started.[53] Based on the foregoing, the ALJ concluded that Plaintiff's daily activities did not comport with her claim of severely limited

---

[49] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[50] *Id.*

[51] *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)).

[52] R. 42-43, 174-77, 321.

[53] R. 39, 178-82, 283.

11

functioning.[54] This finding is supported by the record, and the ALJ's credibility determination is upheld.

Based upon the medical reports, Plaintiff's reports and testimony, and the credibility analysis, the ALJ reasonably found that Plaintiff retained the residual functional capacity to perform unskilled medium work as defined in 20 C.F.R. § 416.967(c) with certain limitations.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[55] The Commissioner may carry this burden by applying the Grids[56] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills if there are no non-exertional limitations.[57] Here, because Plaintiff was not disabled based on her exertional limitations, the ALJ considered the guidelines reflecting her maximum residual strength capabilities, age (closely approaching advanced age), education, and work experience which provide a framework in determining whether her work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations found by the ALJ. The postural limitations that were found by the ALJ did not significantly erode the job base for unskilled medium work. Therefore, a finding of not disabled was appropriate, and substantial evidence supports this conclusion.

---

[54] *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that the ALJ may consider daily activities as one factor in the evaluation of subjective complaints).

[55] *Jones*, 336 F.3d at 474.

[56] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[57] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 10, 2017.